UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MICHAEL W. FIELDS | CIVIL ACTION NUMBER : 5:06CV1496 |
| VERSUS | JUDGE HICKS |
| LIBBEY GLASS, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the Defendant, Libbey Glass, Inc. ("Libbey"). [Doc. No. 37]. Plaintiff, Michael W. Fields ("Fields") has sued Libbey for alleged race discrimination and retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and Louisiana state law. Taylor claims that he was not promoted to four different positions based on his race or in retaliation. Defendant moves for summary judgment dismissing all of plaintiff's claims. Plaintiff opposes the motion. For the reasons which follow, the defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

**I.    Fields' Employment at Libbey.**

Libbey Glass manufactures glassware in its Shreveport plant. This plant is divided into several sections, including Decorating, Lean, Corrugated/Repack, Quality Assurance ("QA"), and Production. [Doc. No. 37-3 at 1]. The Production section is the manufacturing heart of the facility. It is divided into three departments – the Machine Mold Shop, the Machine Repair Shop, and Production Operations or "production core." [Id. at 2]. The Production section currently is headed by General Manager James McDonald ("McDonald"), who assumed that position in approximately February or March of 2005. [Id. at 4]. The Production Operations

section is currently managed by Jim Rabalais ("Rabalais"), who replaced McDonald following McDonald's promotion to General Manager. [Id. at 5]. Beneath Rabalais are four Production Core Shift Managers ("Shift Managers"), the positions at issue in this case. [Id.].

Each Shift Manager heads a production core shift, designated A, B, C, or D. [Id. at 7]. In the Shreveport plant, each Shift Manager supervises four salaried production supervisors and approximately 60-80 hourly employees. [Id. at 8]. Each Production Shift Manager is responsible for meeting quality and production goals for their respective shifts. [Id. at 9].

Fields has worked for Libbey Glass for approximately 24 years. He became a supervisor in 1995 or 1996. [Id. at 11]. In 1999 Fields was working in Production as forming/ select and pack supervisor on B-shift at the Shreveport facility. [Id. at 12]. His supervisor was Dewayne Sandifer. [Id. at 13].

In approximately August 1999, Fields was offered the position of Production Core Shift Manager at Libbey Glass' City of Industry plant in California. [Id. at 14]. Fields accepted this position and moved to California. [Id. at 16]. However, six months into his position there, Fields contacted HR representatives Peter Williams and Frank Russell and asked to be transferred back to Shreveport. [Id. at 19]. Later that year a supervisor position became available in Production. [Id. at 20]. Fields agreed to take this job and returned to Shreveport in November or December. [Id. at 21].

When Fields returned to the Shreveport plant, he worked in the Production core as a forming/ select and pack supervisor on A-shift for approximately two years. [Id. at 22]. In this position, he supervised from 30-40 hourly employees but no supervisors. [Id. at 23]. Fields also acted as a Back-up Shift Manager. [Id.]. Back-up Shift Managers assume the duties of the Shift Manager if the Shift Manager becomes ill, goes out on leave, or takes a special

assignment.  Back-up Shift Managers are potential candidates for the Shift Manager position. [Id.]

In approximately 2003, Fields transferred into the Corrugated /Repack section.  [Doc. No. 37-4, Ex. A (Fields depo.) at 13, 92; Ex. E (Mayes depo.) at 53.]  He was a supervisor in the Repack area for under a year.  [Id., Ex. A at 8].  He then became a supervisor in the Corrugated area, where he has been for approximately the last four years.  He supervises approximately 24 hourly employees.  [Doc. No. 37-3 at 29].

**II.    The February 16, 2005 Production Shift Manager position.**

Sometime before February of 2005, approximately two years after Fields transferred out of Production and into Corrugated/ Repack, B-Shift Manager Dewayne Sandifer transferred to another position, leaving his B-shift Shift Manager position vacant.  [Id. at 31]. Productions Operation Manager McDonald compiled a short list of seven candidates who had expressed interest in the position.  [Id. at 33].  These candidates were Fields, a black male; Don Woodard ("Woodard"), a white male; Terry Chreene ("Chreene"), a white female; Shannon Taylor ("Taylor"), a white male; Jason Taravella ("Taravella"), a white male; Annette Youngblood, a white female; and Ted Youngblood, a white male.  [Id. at 34].

McDonald testified in his deposition that he interviewed the current Shift Managers about each candidate's skill sets, tendencies, experience and judgment. [Doc. No. 37-4, Ex. B (McDonald depo.) at 28-30, 102].  He claims that all four Production Shift Managers told McDonald that Fields was not qualified for promotion. [Id. at 28-30].  Specifically, they stated that although Fields was a competent supervisor, he lacked the take charge, leadership skill-set needed to be a Shift Manager at the Shreveport plant.  [Id.].  McDonald also testified that Fields' direct supervisor in Corrugated/Repack stated that Fields was not qualified for promotion to Production Shift Manager.  [Id. at 28-30; Ex. E at 34, 36, 48, 50-51].  McDonald

testified that based on his conversations and experience with the candidates and the feedback of their supervisors, he selected Woodard for the position.

### III. The March 1, 2005 Production Shift Manager position.

Later in February of 2005, Dennis Coppersmith transferred from his position as D-shift Production Shift Manager to C-shift Production Shift Manager, leaving the D-shift position vacant. [Doc. No. 37-3 at 52]. Although Fields expressed interest in the position [Id., Ex. A at 97], McDonald felt that Fields was not a strong candidate based on his earlier investigation. [Id., Ex. B at 58.] Based on his experience with the candidates, his earlier conversations with them, and his interviews with their supervisors, McDonald selected Chreene, who had been Coppersmith's Back-up Shift Manager. [Id.; Ex A at 105].

### IV. The July 1, 2005 Production Core Shift Manager position.

In February of 2005, McDonald became General Manager and Rabalais took over as Production Operations Manager. [Doc. No. 37-3 at 57.] In approximately June of 2005, Dennis Coppersmith, the Shift Manager on C-shift transferred to Decorating, leaving his C-shift position vacant. [Id. at 58]. Rabalais compiled a short list of candidates which included Shannon Taylor, Taravella, Ted and Annette Youngblood, and Jacob Kramer ("Kramer"). [Id., Ex. C (Rabalais depo.) at 26]. Kramer was a former production supervisor, Shift Manager Back-up, and QA supervisor whom Rabalais had supervised directly for two years when Rabalais was QA manager. [Id.]

Rabalais testified that he did not consider Fields for the position because Fields did not express an interest in it to him. [Id., Ex. C at 62]. Fields contends that he did express an interest in the position. [Id., Ex. A at 99, 106]. Rabalais testified that based on his own experiences with Fields as QA Manager from 2003-2005, he felt that Fields' commitment to quality was questionable. [Id., Ex. C at 27, 110]. Specifically, Rabalais stated that he had

investigated box quality issues on the shift Fields supervised in Repack on two separate occasions and was disappointed in Fields' quality approach and quality mentality. [Id. at 27, 63-64, 75-79, 109].

**V.     The August 1, 2006 Production Core Shift Manager position.**

In approximately June of 2006, the Production B-Shift Manager (Woodard) received a lateral transfer and became Production Mold Machine Shop Manager. [Doc. No. 37-3 at 67]. Rabalais testified that he did not consider Fields for this position because of his negative experience with him when he was QA Manager. [Doc. No. 37-4, Ex. C at 63-64]. He also testified that Fields did not express interest in the position, although Fields claims that he did. Rabalais selected Taylor, who had been a top candidate for this position back in February of 2005. [Id. at 98-99, 103-104.]

On March 30, 2005, Fields filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Libbey Glass did not promote him because of his race to the Production Core Shift Manager positions given to Woodard and Chreene. [Id. at 74]. Fields filed his lawsuit on September 1, 2007. [Doc. No. 1]. He then amended his Complaint on February 13, 2007 to include claims regarding the Kramer and Taylor promotions. [Doc. No. 11].

## LAW AND ANALYSIS

**I.     Summary Judgment Standard.**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also, Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*quoting* Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511,

91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant cannot meet this burden, then "the motion for summary judgment must be granted." Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

## II.     Plaintiff's Discriminatory Promotion Claims.

Claims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996); Anderson v. Douglas & Lomason Co., Inc., 26 F.3d 1277, 1284 n. 7 (5th Cir.1994). The Fifth Circuit applies a modified McDonnell Douglas burden-shifting framework to analyze failure to promote claims. A plaintiff must first establish a *prima facie* claim of discrimination. The defendant employer must then articulate a legitimate, non-discriminatory reason for its decision. Once done, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protect characteristic (mixed-motive analysis).'" Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

A *prima facie* case of discrimination in a failure to promote case consists of four elements: (1) the employee is a member of the protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; (4) the employer continued to seek applicants with the plaintiff's qualifications. Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir.2000). The *prima facie* case, once established, raises an inference of intentional discrimination and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the defendant satisfies this burden, the plaintiff must prove that the proffered reasons are pretextual. Id. Once a Title VII or Section 1981 claim reaches this pretext stage, "the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." Id.

Fields claims that he has denied the following promotions:

1. February 16, 2005    Production Shift Manager position
2. March 1, 2005        Production Shift Manager position
3. July 1, 2005         Production Core Shift Manager position
4. August 1, 2006       Production Core Shift Manager position

The decision maker for the first two promotions was McDonald. The decision maker for the last two promotions was Rabalais. Fields' promotion claims will be analyzed in terms of the relevant decision makers.

### A. The promotion decisions made by McDonald.

McDonald claims that he did not select Fields for the Production Shift Manager positions based in part on his interviews with the existing Production Shift Managers at that time, including Dennis Coppersmith, Dewayne Sandifer, Pam Taylor and Rodney Swann. However, each of these individuals was deposed and either denied speaking with McDonald about Fields in regard to these positions or could not recall having such a conversation. Accordingly, it becomes a credibility call for the finder of fact as to whether McDonald was truthful when he

declared that he did not choose Fields based in part on the input he received from these managers.

While the plaintiff still carries the ultimate burden of persuasion as to discrimination, if the fact finder discredits McDonald's testimony, this finding of pretext may be enough for the jury to infer discrimination. While the plaintiff's offered evidence of discrimination is sparse, a question of fact regarding pretext is enough at this stage. Accordingly, the Court finds there is a genuine issue of fact as to Fields' claims concerning the February 16, 2005 and March 1, 2005 Production Shift Manager positions. Accordingly, the motion for summary judgment is denied as to these two claims.

### B. The promotion decisions made by Rabalais.

There is conflicting testimony regarding whether Fields expressed an interest to Rabalais regarding the Production Core Shift Manager positions or whether Fields was willing to perform shift work. However, neither of these factual disputes is material. Rabalais testified that Fields was not considered for the position because of two incidents which occurred when Fields was a Quality Assurance manager. [Doc. No. 37-3, Ex. C at 27]. Rabalais testified that he had been disappointed with Fields' quality approach and how he handled a number of quality issues. [Id.] Although Fields was not considered for the positions, Rabalais testified that he told Fields that he would welcome him back to production core in a supervisor's role to build credibility in that area. [Id.]

In his opposition to the motion for summary judgment, Fields argues that Rabalais told him that he was not considered for the position due to a lack of work history. [Doc. No. 43 at 17]. However, in his deposition, Fields admits that during that same conversation, Rabalais brought up what he perceived to be problems with Fields' work in quality assurance. [Doc. No. 37-3. Ex. A at 102-103]. While Fields denies that the problems that occurred were his fault,

he cannot survive summary judgment merely by disagreeing with Rabalais. The issue is whether Rabalais' perception of Fields' performance, accurate or not, was the real reason for not selecting him for the positions. Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001)(*citing* Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408-490 (5th Cir. 1999). Neither the information concerning the successful candidate's vague (and likely protected) "health issues" nor the statistical information offered by Field is sufficient to create a genuine issue of fact as to Rabalais' perception of Fields' prior work performance.

Since Fields has offered no facts or information that Rabalais did not believe that the previous quality assurance issues were indicative of poor performance on Fields' part, he has failed to create a genuine issue of fact as to his claims concerning the July 1, 2005 and August 1, 2006 Production Core Shift Manager positions. Accordingly, the motion for summary judgment is granted as to these two claims.

### III. CONCLUSION

For the foregoing reasons, the Court finds that summary judgment is proper as a matter of fact and law as to plaintiff's claims concerning the Production Core Shift Manager promotions on July 1, 2005 and August 1, 2006. The Court finds that genuine issues of fact remain concerning plaintiff's claims concerning the Production Shift Manager positions on February 16, 2005 and March 1, 2005.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Defendant [Doc. No. 37] be **DENIED** as to Plaintiff's claims concerning the Production Shift Manager positions on February 16, 2005 and March 1, 2005.

**IT IS FURTHER ORDERED** that in all other respects, Defendant's motion be **GRANTED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of January, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE